UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
JAMES EDWARDS,                                                     :
                                                                   :
                                         Plaintiff,                :
                                                                   :        **INITIAL REVIEW**
            -against-                                              :        **ORDER**
                                                                   :
DAWSON, et al.,                                                    :        3:24-CV-1821 (VDO)
                                                                   :
                                         Defendants.               :
------------------------------------------------------------------ x

**VERNON D. OLIVER**, United States District Judge:

Plaintiff James Edwards, an inmate[1] incarcerated at Corrigan-Radgowski Correctional Center ("Corrigan"), filed this action *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against Defendants Lieutenant Dawson, Warden Daniel Dougherty, Warden Burgos,[2] Captain Daniel Papoosha, and District Administrator Craig Washington. He claims that, while he was a pretrial detainee, Defendants violated his rights under the Fourteenth Amendment by placing him in Restrictive Housing and designating him as a Security Risk Group member without

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The Connecticut DOC website reflects that Plaintiff was admitted to the DOC on August 1, 2024, and was sentenced on November 22, 2024. *See* Connecticut State Department of Correction, https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=343428 (last visited April 25, 2025).

[2] Plaintiff did not list Warden Burgos in the case caption of his Complaint in accordance with Rule 10(a) of the Federal Rules of Procedure. Plaintiff does, however, name Warden Burgos as a defendant at the end of his complaint, (Compl., ECF No. 1 at 15 ¶ 8-9), and therefore, the Court will consider Warden Burgos as a defendant, *see Imperato v. Otsego County Sheriff's Dep't.*, 2016 WL 1466545, at *26 (N.D.N.Y. April 14, 2016).

affording him Due Process.³ He seeks damages and sues Defendants in their individual and official capacities.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

## I. FACTUAL BACKGROUND

While the Court does not set forth all the facts alleged in Plaintiff's complaint, it summarizes his basic factual allegations here to give context to its rulings below.

---

³ The court may take judicial notice of state court records. *Velasco v. Gonclavez*, No. 3:21-CV-1573 (MPS), 2022 WL 19340, at *2, n.2 (D. Conn. Jan. 3, 2022). A review of the Connecticut State Court records appears to show that Plaintiff was on probation for a prior criminal conviction at the time he was admitted to the DOC. *See* State of Connecticut Judicial Branch, https://www.jud2.ct.gov/crdockets/SearchByDefDisp.aspx (last visited April 25, 2025). This District has found that "an individual who is not "in custody," including a probationer or parolee, cannot state an Eighth Amendment claim because they are considered a pretrial detainee, and therefore, the individual's claim must be assessed under the Fourteenth Amendment. *See Schlosser v. Elzea*, No. 3:19-CV-1380 (SRU), 2020 WL 887752, at *5 (D. Conn. Feb. 24, 2020) (citing cases); *see also Russell v. Lumitap*, 31 F.4th 729, 733 (9th Cir. 2022) (categorizing as a pretrial detainee a defendant who "was arrested for a probation violation and booked" at the jail); *Paugh v. Uintah Cty.*, 47 F.4th 1139, 1147–48 (10th Cir. 2022); *Bond v. Moore*, 672 F. Supp. 3d 357, 368–69 (E.D. Ky. 2023). Accordingly, the Court will consider Plaintiff as a pretrial detainee when analyzing his constitutional claims.

On August 14, 2024, Plaintiff was admitted to the DOC as a pretrial detainee, and he was sent to the Restrictive Housing Unit[4] ("RHU"). (Compl., ECF No. 1 at 12 ¶ 1.) Plaintiff was placed in RHU for fourteen days "with no explanation for a Security Risk Group ("SRG") determination pending an investigation." (*Id*.) On the same day Plaintiff was sent to RHU, he "was seen by Lieutenant Dawson and found guilty for a Security Risk Group determination without . . . procedural due process [or] a disciplinary hearing of any sort. . . ." (*Id*. at ¶ 2.) Plaintiff claims that he "was bribed to sign the Security Risk Group determination" or else he would remain in RHU. (*Id*.) He further alleges that Lieutenant Dawson explained to him that he was found guilty of a "Security Risk Group member determination . . . because of a Facebook social media posting and pictures." (*Id*. at 13 ¶ 3.) Plaintiff claims that this violates his Fourth Amendment[5] "right of unreasonable search" and his Fourteenth Amendment right to due process for not following the DOC "Administrative Directives Policies and Procedures

---

[4] The Connecticut Department of Corrections website contains the Directives and Policies for DOC. *See Directives and Policies*, https://portal.ct.gov/doc/common-elements/common-elements/directives-and-polices-links (last visited May 1, 2025). Administrative Directive 9.4, titled "Special Management," defines RHU as "[a]n inmate housing unit which is physically separated from other inmate housing in which inmates on Administrative Detention, Punitive Segregation, or Transfer Detention are placed." *See* https://portal.ct.gov/doc/ad/ad-chapter-9.

[5] Giving liberal construction to Plaintiff's Complaint, he claims that prison officials viewing his Facebook and using his posts as evidence to determine his SRG status violates his "United states V Amendment Constitutional Right of unreasonable search." (Compl., ECF No. 1 at 13 ¶ 4.) The Due Process Clause of the Fifth Amendment applies to the United States and the Due Process Clause of the Fourteenth Amendment applies to the states. *See Kelly v. Santiago*, No. 3:18-CV-01796-VAB, 2019 WL 3574631, at *6 (D. Conn. Aug. 6, 2019). The Fourth Amendment provides for "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. Const. amend. IV. The Court construes Plaintiff's claim pertaining to "unreasonable search" as a claim for violation of his Fourth Amendment right to be free from unreasonable search and seizure.

3

of 6.14 Security Risk Groups . . . for an SRG determination from Lieutenant Dawson." (*Id*. at ¶ 4.)

Plaintiff filed an appeal of the administrative decision, and he was told his Security Risk Group determination was based on "readmission for a non-disciplinary hearing." (*Id*. at ¶ 5.) He avers that he exceeded more than eighteen months "and clearly fail[ed] to utilize[] a CN 61409 90-day review notification to establish any sort of readmission when [he] was told its actual purpose from [Lieutenant] Dawson." (*Id*. at ¶ 5.) Plaintiff provides that the DOC "Administrative Directive 6.14 Security Risk Groups Page 8 Section 18[6] specifically indicates the policies of readmission of a Security Risk Group Member within a 90-day timeframe[,] and [he] has been out of prison more than 90 days." (*Id*. at 14 ¶ 6.) He states that he has been out of prison more than 18 to 24 months and "these policies should not [be] applied to [him] upon [his] prison readmission." (*Id*.)

Plaintiff claims that Defendants Warden Dougherty, Warden Burgos, Captain Papoosha, and Washington have personal involvement in Lieutenant Dawson's "wrongful misconduct by signing and print[ing] their names on the [DOC] administrative appeal decision about this matter." (*Id*. at 15 ¶ 8.) He also claims that each listed Defendant is reliable and responsible in their individual and official capacities "as well for causation [for] Lieutenant

---

[6] The DOC Directive 6.14, titled "Security Risk Groups" provides, in relevant part, that an inmate discharged from the DOC while designated as an SRG member will be readmitted to the same status and will be placed on Administrative Detention status pending placement to appropriate housing. The inmate's status shall be reviewed by the Facility Intelligence Coordinator/Unit Manager within 90 days of readmission. Prior to meeting with the inmate, the Coordinator shall review the inmate's SRG file and notify the inmate of the pending meeting regarding the inmate's SRG status. *See* https://portal.ct.gov/doc/ad/ad-chapter-6 (last visited May 1, 2025.)

4

Dawson['s] misconduct . . ." for violation of his rights under the Due Process Clause of the Fourteenth Amendment. (*Id*. at ¶ 9.) He seeks nominal and punitive damages. (*Id*. at 16-17.)

## II.　LEGAL STANDARD

Under 28 U.S.C. § 1915A, courts must review prisoner civil complaints in which a prisoner seeks redress from a governmental entity and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam)). However, *pro se* litigants are still required to comply with Rule 8 of the Federal Rules of Civil Procedure. *See, e.g.*, *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike."). Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration in original). A statement of claim that is not short and direct places "an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.'" *Harden v. Doe*, No. 19-CV-3839(CM), 2019 WL 2578157, at *2 (S.D.N.Y. June 24, 2019) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)) (internal quotation marks and citation omitted).

### III. DISCUSSION

Construing Plaintiff's complaint liberally, he brings claims under 42 U.S.C. § 1983 for violation of his substantive and procedural due process rights under the Fourteenth Amendment stemming from his placement in RHU and designation as a Security Risk Group ("SRG") member. He also brings a claim for violation of his right to be free from search and seizure under the Fourth Amendment pertaining to a search of his Facebook posts and photos. He sues Defendants in both their individual and official capacities.

#### A. Official Capacity Claims

Plaintiff brings this suit against Defendants in their official and individual capacities. (Compl., ECF No. 1 at 15 ¶ 9), but he solely seeks monetary damages and does not seek injunctive or declaratory relief, (*Id*. at 16-17.) The Eleventh Amendment bars a federal court from holding Department of Correction employees liable in their official capacity for money damages. *See Kelly v. New York State Unified Ct. Sys.*, 2022 WL 1210665, at *1 (2d Cir. 2022). Plaintiff may seek official capacity relief against a state official only to the extent that he alleges an ongoing violation of the constitutional rights for which a federal court may enter an order of prospective relief against that official in his official capacity. *See, e.g.*, *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)); *Silva v. Farrish*, 47 F.4th 78, 84 (2d Cir. 2022). Because Plaintiff is solely seeking monetary damages against Defendants, his official capacity claims against Defendants are dismissed. *See e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

**B. Individual Capacity Claims against Defendants Warden Dougherty, Warden Burgos, Captain Papoosha, and Washington**

Plaintiff claims that Defendants Warden Dougherty, Warden Burgos, Captain Papoosha, and Washington have personal involvement in Lieutenant Dawson's wrongful misconduct by signing and printing their names on the DOC administrative appeal decision about this matter. (Compl., ECF No. 1 at 15 ¶ 8.) Plaintiff also claims that each of these Defendants are liable and responsible for Lieutenant Dawson's misconduct without explaining how they are liable, other than asserting that they signed the administrative appeal decision. (*Id*. at ¶ 9.)

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *Wright v.*

7

*Smith*, 21 F.3d 496, 501 (2d Cir. 1994). This is true with respect to supervisory officials as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) ("[A] plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability" in order to hold a state official liable for damages under § 1983.). Moreover, "[s]ince *Tangreti*, district courts have held that review of a grievance, administrative, or disciplinary appeal is insufficient to establish the reviewer's personal involvement in claims relating to the underlying proceeding." *Muniz v. Cook*, No. 3:20-CV-1533 (MPS), 2021 WL 5919818, at *6 (D. Conn. Dec. 15, 2021) (collecting cases); *see also Rooks v. Santiago*, No. 3:20CV299 (MPS), 2021 WL 2206600, at *3 (D. Conn. June 1, 2021) (allegations that District Administrator denied grievance appeals regarding SRG placement insufficient to show his personal involvement in alleged Fourteenth Amendment violation arising from SRG affiliation or placement); *MIGUEL COSTA, Plaintiff, v. KOCAQI, et al., Defendants.*, No. 3:24-CV-01586 (KAD), 2025 WL 1207538, at *7 (D. Conn. Apr. 25, 2025).

Here, Plaintiff has failed to allege facts that establish the personal involvement of Defendants Warden Dougherty, Warden Burgos, Captain Papoosha, and Washington in any alleged constitutional violations. Instead, Plaintiff appears to impute liability to these Defendants because they signed their names on the DOC administrative appeal form. This allegation, by itself, is insufficient to establish personal involvement. Accordingly, Plaintiff's claims against these Defendants are dismissed.[7]

---

[7] Plaintiff also alleges that Defendants violated DOC administrative directives. It is does not appear that Plaintiff is attempting to bring a claim against Defendants for actual violation of DOC directives, but instead, using these allegations as an example of violations of procedural due process. Even so, "[a] violation of or failure to follow an administrative directive does not state a

### C. Fourteenth Amendment Due Process Claims against Lieutenant Dawson

Plaintiff claims that Defendant Lieutenant Dawson violated his Fourteenth Amendment Due Process rights as a pretrial detainee. (Compl., ECF No. 1 at 15 ¶ 9.) The Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The Due Process Clause of the Fourteenth Amendment protects both a right to "substantive" due process and "procedural" due process. *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998).

**Substantive Due Process**

The U.S. Supreme Court has held that "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Accordingly, "[a] pretrial detainee may not be punished at all under the Fourteenth Amendment, whether ... by deliberate indifference to conditions of confinement, or otherwise." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d. Cir. 2017). "A pretrial detainee may state a substantive due process claim in two ways, by showing that the defendants were deliberately indifferent to the conditions of his confinement or by showing that the conditions were punitive."

---

claim of a violation of a federal or constitutionally protected right." *Jones v. Rodi*, No. 3:19-CV-1866 (VAB), 2020 WL 1820816, at *7–8 (D. Conn. Apr. 10, 2020); *see also Whitaker v. Evans*, No. 3:19CV1129 (MPS), 2019 WL 6700188, at *3 (D. Conn. Dec. 9, 2019) ("[D]efendants' failure to comply with prison regulations or administrative directives does not constitute a basis for relief under Section 1983 because "a prison official's violation of a prison regulation or policy does not establish that the official has violated the Constitution or is liable to a prisoner under 42 U.S.C. § 1983.") (quoting *Fine v. UConn Med.*, No. 3:18-CV-530 (JAM), 2019 WL 236726, at *9 (D. Conn. Jan. 16, 2019)). To the extent Plaintiff brings claims against Defendants, including Lieutenant Dawson, for violations of administrative directives, these claims are dismissed.

*Lawrence v. Zack*, No. 24-CV-1142, 2024 WL 4116928, at *7 (D. Conn. Sept. 9, 2024); *Darnell*, 849 at 34 n.12.

### Punitive Conditions

To determine whether a pretrial detainee's conditions of confinement are punitive in violation of the detainee's substantive due process rights "[a] court must decide whether the [restriction] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)) (alteration in original). If there is no proof of intent to punish, then the court must determine whether there is an alternative rational purpose for the restriction and "whether [the restriction] appears excessive in relation to the alternative purpose assigned." *Allah*, 876 F.3d at 55. A pretrial detainee's confinement in restrictive housing is not considered punitive if that confinement is reasonably related to a legitimate governmental purpose. *Id*. On the contrary, if the confinement in restrictive housing is "arbitrary or purposeless[,]" then it can be inferred that the governmental action is for the purpose of punishment. . . ." *Id*. (quoting Bell, 441 U.S. at 535).

For example, in *Almighty Supreme Born Allah*, the Second Circuit concluded that a pretrial detainee's substantive due process rights were violated because he was placed into Administrative Segregation, not based on any concern of institutional safety, but solely because he was previously assigned to Administrative Segregation during his previous incarceration and failed to complete the program. 876 F.3d at 57. In other words, the prison officials violated the detainee's substantive due process rights because they "adhered reflexively to a practice that did not allow for individualized consideration of [the detainee's

10

circumstances], . . . regardless of his actual threat, if any, to institutionalized security." *Id*. at 57. Similarly, this District has found an inference of punitive conditions of confinement and a violation of a pretrial detainee's substantive due process rights where the detainee was placed in restrictive housing immediately upon entry into the DOC solely based on outdated social media posts and without receiving an individualized inquiry. *Robinson v. Doe 1*, No. 3:23-CV-1631 (SVN), 2024 WL 1639539, at *4 (D. Conn. Apr. 16, 2024); *Shelton v. Payne*, No. 3:21cv637 (KAD), 2021 WL 3190398, at *4 (D. Conn. July 28, 2021) (holding that immediate placement in SRG on the basis of "old" Facebook posts creates an inference that the plaintiff was being punished in violation of his substantive due process rights).

Plaintiff does not describe the specifics of his conditions while in RHU. Even so, he alleges Lieutenant Dawson explained to him that he was immediately placed into RHU upon admission to the DOC solely because he had previously been placed in RHU during a prior period of incarceration and because of a Facebook social media post and pictures. (*See* Compl., ECF No. 1 at 12 ¶¶ 2, 5.)  These allegations are sufficient to suggest that Lieutenant Dawson played a role in placing Plaintiff into RHU and in designating Plaintiff as an SRG member, without any "individualized consideration" about whether such restrictive conditions served a legitimate penological purpose. Accordingly, upon initial screening, Plaintiff has pleaded a plausible claim against Lieutenant Dawson for violation of his substantive due process rights pertaining to his RHU placement and SRG designation.

### Deliberate Indifference

Pretrial detainees also have a Fourteenth Amendment right against treatment that is the result of deliberate indifference by prison officials to their safety. *See Darnell,* 849 F.3d at 29.

Such a claim requires first establishing a risk of harm that is objectively serious, and then establishing the defendant's deliberate indifference to that harm. *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). Plaintiff must show that the challenged "conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health, which includes the risk of serious damage to physical and mental soundness." *Darnell*, 849 F.3d at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)) (internal quotation marks omitted). In addition, "the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. "A detainee must prove that an official acted intentionally or recklessly, and not merely negligently." *Id.* at 36.

Plaintiff has not provided any specifics about the conditions he was exposed to while in RHU. Accordingly, he has failed to show that his confinement in RHU was under conditions that were objectively serious, i.e., posed an unreasonable risk of serious damage to his health. Therefore, Plaintiff cannot proceed on a deliberate indifference claim pertaining to his conditions of confinement.

### Procedural Due Process

Plaintiff alleges that Lieutenant Dawson violated his right to procedural due process. (Compl., ECF No. 1 at 15 ¶ 9.) A claim of violation of procedural due process must be analyzed by asking whether there exists a liberty or property interest of which a person has been deprived, and if so, whether the procedures followed by the State were constitutionally sufficient. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam). In the prison context,

which involves persons whose liberty interests have already been severely restricted because of their confinement in a prison, a prisoner cannot show a cognizable deprivation of "liberty" unless he can show that he was subject to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). But the liberty interest analysis under "*Sandin* does not apply to pretrial detainees." *Benjamin v. Fraser*, 264 F.3d 175, 188, 190 (2d Cir. 2001). Therefore, the next step in evaluating Plaintiff's procedural due process claim is to determine whether the procedures followed by the State were "constitutionally sufficient." *Cooke,* 562 U.S. 216 at 219.

The level of procedural protection required depends on the purpose of the confinement. *Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir. 1987). For an administrative proceeding, the inmate is entitled only to "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding" the matter. *Hewitt v. Helms*, 459 U.S. 460, 476 (1983) ("an informal, nonadversary evidentiary review is [procedurally] sufficient both for the decision that an inmate represents a security threat and for the decision to confine an inmate to administrative segregation pending completion of an investigation into misconduct charges against him"). For a disciplinary proceeding, an inmate is entitled to advance written notice of the charge, adequate time to prepare a defense, a written statement of the reasons for the disciplinary action taken, and a limited opportunity to present witnesses and evidence in his defense. *Wolff v. McDonnell*, 418 U.S. 539, 561–70 (1974). Both the *Wolff* and *Hewitt* standards require "some evidence" to support the decisions to place an inmate in administrative or punitive segregation. *Brown v. Semple*, No. 3:16-CV-376 (MPS), 2018 WL 4308564, at *12 (D. Conn. Sept. 10, 2018) (citing *Superintendent v. Hill*, 472 U.S. 445, 454

(1985)) (procedural due process requires that decisions in connection with prison disciplinary hearings be "supported by some evidence in the record").

Plaintiff's claims appear to indicate that he was placed in RHU pending an investigation of his SRG affiliation without receiving any notice. (Compl., ECF No. 1 at 12 ¶¶ 1-2.) He also states that he filed an appeal of the administrative decision and was told by Lieutenant Dawson that his SRG determination was based on "readmission for a non-disciplinary hearing." (*Id*. at 13 ¶ 5.) At the same time, Plaintiff claims that he was bribed to plead guilty to an SRG determination and that Lieutenant Dawson told him he was found guilty of an SRG affiliation because of Facebook social media posting and pictures. (*Id*. at 12-13 ¶¶ 2-3.) Finally, he states that he was found guilty of an SRG affiliation without any disciplinary hearing or procedural due process. (*Id*. at 12 ¶¶ 2.)

Based on these allegations, the Court cannot determine whether Plaintiff was placed in RHU pending a disciplinary or classification determination or both, and therefore, the Court cannot discern which procedural protections were warranted. The Court is also unable to discern on initial review whether there was some evidence to support the SRG finding. Nevertheless, Plaintiff has pleaded sufficient allegations to demonstrate that his procedural due process rights were violated by Lieutenant Dawson under both the *Hewitt* and *Wolff* standards because he avers that he received no notice nor procedural protections or process whatsoever. Accordingly, Plaintiff's Fourteenth Amendment procedural due process claim will proceed against Lieutenant Davis for further development of the record.

### D. Fourth Amendment

Plaintiff claims that being found guilty of an SRG determination because of a Facebook social media posting and pictures violates his Fourth Amendment right to be free from

14

unreasonable search and seizure. (Compl., ECF No. 1 at 13 ¶¶ 3-4.) Cases distinguishing Fourth Amendment mandates for reasonable searches for sentenced prisoners and pretrial detainees generally focus on body cavity or strip searches. *See, e.g., Florence v. Board of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318 (2012); *LeTray v. City of Watertown*, No. 5:20-CV-1194(FJS/WD), 2024 WL 1107903, at *4 (N.D.N.Y. Feb. 22, 2024). In *United States v. Boyce*, No. CR 2014-00029, 2015 WL 856943, at *5 (D.V.I. Feb. 26, 2015), the court found no Fourth Amendment violation where prison officials seized and searched the cell phone of a pretrial detainee that was found in his cell. That decision, however, was based on the fact that prisoners and pretrial detainees have no expectation of privacy in their cells. *See also Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell").

An individual has a reasonable expectation of privacy in the contents of his or her home computer, but that expectation may be extinguished when a computer user transmits information over the internet or by e-mail that reaches its recipient. *See United States v. Lifshitz,* 369 F.3d 173, 190 (2d Cir. 2004). Courts have held the determination "of whether the Fourth Amendment applies to a user's Facebook content 'depends, *inter alia*, on the user's privacy settings.'" *United States v. Westley*, No. 3:17-CR-171 (MPS), 2018 WL 3448161, at *6 (D. Conn. July 17, 2018) (quoting *United States v. Meregildo*, 883 F. Supp. 2d 523, 525 (S.D.N.Y. 2012)); *see United States v. Khan*, No. 15-cr-00286, 2017 WL 2362572, at *8 (N.D. Ill. May 31, 2017) (holding that defendant could not claim a Fourth Amendment violation where he "did not maintain any privacy restrictions on his Facebook account, and his Facebook profile was viewable by any Facebook user").

The context of how prison officials accessed Plaintiff's Facebook social media post and photographs matters. Here, Plaintiff provides no context as to how his Facebook post and photos were accessed. It also is not clear which Defendant or Defendants viewed his Facebook post and photos, what electronic forum was used to view his Facebook post and photos, and whether his Facebook page that contained the post and photos was public or private. Plaintiff's allegations are vague and conclusory, and he has failed to plead that he had any reasonable expectation of privacy in his social media posts or photographs. Therefore, the Court finds no Fourth Amendment violation arising from prison officials access of Plaintiff's social media posting or photographs.

## IV. CONCLUSION

The Court enters the following orders:

(1) Plaintiff may **PROCEED** with his Fourteenth Amendment Substantive Due Process and Procedural Due Process claims in connection with his Restrictive Housing Placement and SRG member determination against Defendant Lieutenant Dawson in his individual capacity.

(2) All other claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915A(b). The clerk is instructed to terminate as defendants Warden Daniel Dougherty, Warden Burgos, Captain Daniel Papoosha, and District Administrator Craig Washington.

(3) The Court affords Plaintiff one opportunity to file an Amended Complaint to correct the deficiencies of his claims as identified in this Order. Plaintiff is advised that any Amended Complaint will completely replace the prior complaint in the action, and that no portion of any prior complaint shall be incorporated into his Amended Complaint by reference. Plaintiff must submit his Amended Complaint on or before **August 18**, **2025**.

(4) The clerk shall verify the current work address of Lieutenant Dawson with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint to Lieutenant Dawson at his confirmed address by **July 1**, **2025**, and report on the status of the waiver request by **August 5**, **2025**. If a Defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(5) The clerk shall send a courtesy copy of this Order and a copy of the Complaint to the DOC Office of Legal Affairs.

(6) Defendant Lieutenant Dawson shall file a response to the Complaint, either with an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons form is mailed to him. If Defendant chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claims recited above. Defendant may also include any and all additional defenses permitted by the Federal Rules.

(7) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by **January 16**, **2026**. Discovery requests need not be filed with the Court.

(8) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(9) All motions for summary judgment shall be filed by **February 15, 2026**.

(10) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(11)    If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendants or defense counsel of his new address.

(12)    Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on Defendants' counsel by regular mail.

**SO ORDERED.**

Hartford, Connecticut
June 17, 2025

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge